Filed 6/11/13  Radford v. BAE Systems San Francisco Ship Repair CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **RANDALL RADFORD,** | |
| **Plaintiff and Appellant,** | **A132254** |
| **v.** | |
| **BAE SYSTEMS SAN FRANCISCO SHIP REPAIR INC.,** | **(San Francisco City & County Super. Ct. No. CGC-09-488061)** |
| **Defendant and Appellant.** | |

Plaintiff Randall Radford (appellant) appeals from the trial court's order granting defendant BAE Systems San Francisco Ship Repair Inc.'s (respondent) motion for new trial.  We affirm.

## BACKGROUND

Respondent operates a large shipyard at the Port of San Francisco.  In October 2005, plaintiff, who is African-American, was hired by respondent as facilities manager.

In January 2008, there was a serious crane accident at respondent's shipyard.  In March 2008, Hubert Vanderspek was brought from San Diego to San Francisco and appointed acting general manager of the shipyard.  On June 19, 2008, Vanderspek told plaintiff he was being terminated because Vanderspek had "decided to go in a different direction" by reassigning duties and appellant "was no longer needed."

Appellant believed he had been discriminated against and he filed complaints with California's Department of Fair Employment and Housing.  The subsequent proceedings are detailed below (see, *infra*, part III.), but ultimately appellant received a right-to-sue notice.

1

In May 2009, appellant filed his complaint in the present action against respondent and Vanderspek. He alleged causes of action for racial discrimination, racial harassment, retaliation, wrongful termination, and failure to prevent discrimination and harassment. Both defendants moved for judgment on the pleadings on the ground that appellant's second cause of action for harassment should be dismissed because appellant failed to exhaust his administrative remedies; Vanderspek also moved for judgment on the retaliation claim. The trial court granted the motion, which disposed of all the claims against Vanderspek. This court affirmed the entry of judgment in favor of Vanderspek in *Radford v. Vanderspek* (Jan. 9, 2012, A129524 & A129762) (nonpub. opn.). (See, *infra*, part III.)

At trial, Vanderspek testified he consolidated appellant's position with the engineering manager position, and the engineering manager assumed the combined position, because appellant lacked the skills to perform the engineering manager's duties. Vanderspek asked respondent's director of operations to look for a suitable alternative position for appellant, but no other available position was a good fit.

Appellant presented evidence he was an exemplary employee; Vanderspek exhibited hostility toward African-American employees and treated them less favorably; Vanderspek used racially derisive language in reference to two African-American employees; Vanderspek treated appellant unfavorably; and no Caucasian managers lost their jobs during respondent's restructuring. Appellant also presented evidence two other managers had used racial slurs in reference to appellant. Appellant sought to present evidence of incidents of discrimination and racism involving other employees, but the trial court ruled in response to a motion in limine from respondent that only evidence of incidents involving Vanderspek or appellant were admissible. (See, *infra*, part II.B.)

On January 10, 2011, the jury returned a special verdict finding, among other things: (1) by a 9 to 3 vote, race was a motivating reason for the termination of appellant's employment; (2) by a 9 to 3 vote, respondent failed to take reasonable steps to prevent discrimination against appellant; (3) by an 11 to 1 vote, respondent did not terminate appellant's employment because he complained about discrimination; and

2

(4) by a 9 to 3 vote, respondent acted with malice, oppression, or fraud. The jury awarded appellant $60,000 in past economic damages; $360,000 in past noneconomic damages; and $0 in future damages.

On January 21, 2011, following a separate trial phase, the jury awarded appellant $1.75 million in punitive damages. The subsequent proceedings are detailed below (see, *infra*, part I.A.). In summary, the trial court held that $420,000 was the maximum punitive damages permitted under the federal Constitution and, on March 7, 2011, entered judgment in favor of appellant in the amount of $835,455, which reflected an offset for unemployment insurance benefits he received. Subsequently, the trial court granted respondent's motion for new trial. This appeal and cross-appeal followed.

DISCUSSION

I. *The Trial Court Had Jurisdiction to Grant the New Trial Motion*

Appellant contends the trial court was without jurisdiction to grant the new trial motion because respondent's prejudgment motion regarding the constitutionality of the punitive damages award was a "de facto motion for a new trial" and because the trial court's specification of reasons was an untimely amendment of its order granting a new trial. Appellant's contentions are without merit.

A. *Procedural Background*

The jury rendered its phase one verdict on January 10, 2011, awarding appellant $420,000 in compensatory damages and finding that respondent acted with malice, oppression, or fraud. After hearing evidence of respondent's financial condition, the jury rendered its phase two verdict on January 21, awarding $1.75 million in punitive damages. Respondent sought leave from the trial court to submit prejudgment briefing on whether the amount of the punitive damages award was constitutional. The court set a briefing schedule. Respondent's January 26 brief stated it was "without prejudice to its right to address more fully in posttrial motions the propriety of the verdict and the sums awarded therein." Appellant filed a brief arguing the punitive damages award was constitutional, but also objecting to prejudgment consideration of the issue. In response to the objection, respondent argued the trial court had authority under Code of Civil

3

Procedure, section 664[1] to reserve the constitutional issue for consideration before entry of the judgment.

On February 18, 2011, the trial court held that $420,000 was the maximum constitutionally permissible punitive damage award. On March 7, the court entered judgment, stating "[t]he maximum amount of punitive damages that is constitutionally permissible is an issue of law for the court," "the court ordered the case to be reserved for argument and further consideration under . . . section 664," and the decision on the constitutional issue "is without prejudice to the parties' rights to file motions for new trial and/or motions for judgment notwithstanding the verdict."

Subsequently, respondent moved for new trial and for partial judgment notwithstanding the verdict (JNOV) on punitive damages. In opposing the motion for new trial, appellant argued the trial court had no jurisdiction to grant a new trial because it had already considered respondent's prejudgment motion, which was effectively a motion for new trial. On May 6, 2011, the trial court entered a minute order granting a new trial. The order stated in relevant part: "Motion for New Trial, or in the alternative Remittitur, is GRANTED on the following grounds: [¶] (1) Irregularity in the proceedings of the court, jury or plaintiff or orders of the court of abuse of discretion by which [respondent] was prevented from having a fair trial (§ 657, subd. 1); [¶] (2) Excessive damages (§ 657, subd. 5); and [¶] (3) Error in law occurring at trial and excepted to by [respondent] (§ 657, subd. 7). [¶] The order granting the new trial is subject to [appellant] accepting a remittitur of $55,455 in past economic damages, $166,365 in past noneconomic damages, and $250,000 in punitive damages within 15 days of the date of this order. [¶] Pursuant to [section 657], the specifications of reasons supporting the above orders will be filed and served within 10 days."

On May 11, 2011, appellant filed a "consent" to a remittitur as specified in the May 6 order. On May 16, the trial court issued an order specifying its reasons for granting a new trial (Specification). The May 16 order purported to "amend" the May 6

---

[1] All undesignated section references are to the Code of Civil Procedure.

order; the Specification granted the motion for new trial unconditionally, without provision for the remittitur in the May 6 order.

B. *Analysis*

Appellant first contends the trial court lacked the authority to grant the postjudgment motion for new trial because respondent's prejudgment motion regarding the constitutionality of the punitive damages award was effectively a motion for new trial, and the law does not provide for successive motions for new trial. The trial court stated it was considering the issue under section 664, which empowered the court to delay entry of judgment to reserve the case "for argument or further consideration."[2] Appellant asserts that "[t]he only *procedural* mechanism under California law for reducing the damages awarded by a jury is by way of a motion for new trial under" section 657, subdivision 5. However, although appellant presents authority that the procedures for considering a motion for new trial must be strictly followed, he presents no authority supporting the proposition that the trial court could not consider the constitutionality of the punitive damages award under section 664. In fact, his opening brief does not even reference section 664, despite the fact that it was the basis asserted by the trial court for considering the issue. His reply brief addresses section 664, but none of the authorities he cites support the limitation on the trial court's authority he proposes. Because appellant has failed to properly support his claim of error, we need not consider the contention any further. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

In any event, we need not decide whether the trial court was empowered to consider the constitutionality of the punitive damages award under section 664 because

---

[2]  Section 664 states in full:  "When trial by jury has been had, judgment must be entered by the clerk, in conformity to the verdict within 24 hours after the rendition of the verdict, whether or not a motion for judgment notwithstanding the verdict be pending, unless the court order the case to be reserved for argument or further consideration, or grant a stay of proceedings.  If the trial has been had by the court, judgment must be entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision.  In no case is a judgment effectual for any purpose until entered."

appellant has not demonstrated the prejudgment motion was a de facto motion for new trial. "[I]n deciding the constitutional maximum, a court does not decide whether the verdict is unreasonable based on the facts; rather, it examines the punitive damages award to determine whether it is constitutionally excessive . . . ." (*Gober v. Ralphs Grocery Co.* (2006) 137 Cal.App.4th 204, 214.) " 'A . . . court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause. [Citation.]' [Citation.]" (*Ibid.*) The issue may properly be raised in a JNOV motion. (*Id.* at pp. 214-215.) Accordingly, if respondent's motion was not proper under section 664, it was a de facto JNOV motion, not a de facto motion for a new trial.

For the first time in his reply brief, appellant argues that, if respondent's prejudgment motion was a de facto JNOV motion, it still barred respondent from bringing the postjudgment motion for new trial, because the Code of Civil Procedure contemplates that JNOV and new trial motions be made concurrently.[3] However, appellant did not argue to the trial court that respondent's motion was effectively a JNOV motion. Thus, appellant has forfeited his reply brief argument about the legal consequences of treating respondent's prejudgment motion as a de facto JNOV motion. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 & fn. 2; see also *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 948.) Because the trial court might have delayed resolution of the issue until consideration of respondent's motion for new trial had appellant argued the constitutionality of the punitive damages award should be considered as part of respondent's JNOV motion, we will not exercise our discretion to consider appellant's argument on appeal. (*In re S.B.*, at p. 1293.)

---

[3] Section 629, not cited by appellant, provides in relevant part: "A motion for [JNOV] shall be made within the period specified by Section 659 of this code in respect of the filing and serving of notice of intention to move for a new trial. The making of a motion for [JNOV] shall not extend the time within which a party may file and serve notice of intention to move for a new trial. The court shall not rule upon the motion for [JNOV] until the expiration of the time within which a motion for a new trial must be served and filed, and if a motion for a new trial has been filed with the court by the aggrieved party, the court shall rule upon both motions at the same time."

6

Appellant next contends, "[e]ven if [respondent's] second motion for new trial were jurisdictionally proper, the trial court erred in attempting to amend its ruling on that motion beyond the 60-day period permitted under . . . section 660 to unconditionally grant a new trial." Appellant is referring to the fact that the trial court's May 6, 2011 order, entered within the 60-day period specified in section 660,[4] gave appellant the option of consenting to a remittitur, but the Specification, entered after expiration of the 60-day period, unconditionally granted a new trial. The Specification does not expressly address the omission of the remittitur in the May 6 order, but the Specification does state it "amends" the May 6 order. Appellant contends the court could not amend the May 6 order because the time for ruling on the motion for new trial had expired and the court only had authority to specify its reasons for the May 6 order.[5] He also contends his acceptance of the remittitur in the May 6 order is binding and the court could not amend the May 6 order even if the 60-day period had not expired.

Appellant's objections to the Specification fail because the remittitur in the May 6 order was without legal effect. "Section 662.5 specifically states that the procedural device of remittitur is to be utilized *only* when a new trial is warranted solely on the grounds of excessive damages. [Former section 662.5[6]] reads in relevant part: 'In any civil action where after trial by jury *an order granting a new trial limited to the issue of*

_____

**4**  Section 660 provides in relevant part: "[T]he power of the court to rule on a motion for a new trial shall expire 60 days from and after the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 or 60 days from and after service on the moving party by any party of written notice of the entry of the judgment, whichever is earlier, or if such notice has not theretofore been given, then 60 days after filing of the first notice of intention to move for a new trial. If such motion is not determined within said period of 60 days, or within said period as thus extended, the effect shall be a denial of the motion without further order of the court."

**5**  Section 657 provides in relevant part: "The order passing upon and determining the motion must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain the specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons in writing with the clerk."

**6**  See Statutes 1969, chapter 115, section 1, page 252.

7

*damages would be proper*, the trial court may in its discretion: . . . . [¶] (b) If the ground for granting a new trial is excessive damages, make its order granting the new trial subject to the condition that the motion for a new trial is denied if the party in whose favor the verdict has been rendered consents to a [remittitur].' . . . [Citation.]" (*Schelbauer v. Butler Manufacturing Co.* (1984) 35 Cal.3d 442, 452-453 (*Schelbauer*).) "The statutory requirement that use of remittitur be limited to those cases where jury error is confined to the issue of damages is express and unequivocal." (*Id.* at p. 453; see also *id.* at p. 454 ["[former] section 662.5 expressly confines the use of a remittitur to reduce excessive damages and does not authorize its use beyond that limited context"].)[7]

The trial court's May 6, 2011 order recites three grounds: "(1) Irregularity in the proceedings . . . by which [respondent] was prevented from having a fair trial (§ 657, subd. 1); [¶] (2) Excessive damages (§ 657, subd. 5); and [¶] (3) Error in law occurring at trial and excepted to by [respondent] (§ 657, subd. 7)." Although the Specification no longer recited an error of law as a ground for a new trial, it did specify that "prejudicial misconduct" by appellant's counsel constituted an irregularity that deprived respondent of a fair trial. Under *Schelbauer*, where an order recites grounds for a new trial other than excessive damages, but also refers to a remittitur, the remittitur is a "void condition." (*Schelbauer*, *supra*, 35 Cal.3d at p. 455.) " 'The condition is simply disregarded and the order stands. [Citations.]' [Citations.]" (*Ibid.*) Absent the remittitur, the May 6 order was an unconditional grant of a new trial, and the Specification was consistent. Accordingly, appellant's contentions that he effectively consented to the remittitur and that the Specification improperly amended the May 6 order are without merit.

II. *The Trial Court Did Not Abuse Its Discretion in Granting a New Trial*

Appellant contends the record does not support the trial court's grant of a new trial on the basis of misconduct by appellant's counsel, asserting "plaintiff's counsel either did

---

**7**  Section 662.5 was amended effective January 1, 2012, but the amendments do not appear to alter the statute's meaning.

not violate the court's orders or did not act inappropriately, thus belying the trial court's conclusion that misconduct by plaintiff's counsel warranted a new trial." We disagree.

A. *Standard of Review*

" 'A trial court has broad discretion in ruling on a motion for a new trial, and there is a strong presumption that it properly exercised that discretion. " 'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' " [Citation.]' [Citation.] [¶] 'Misconduct of counsel as a ground for new trial presents a matter primarily committed to the trial court. [Citation.] The judge who presides over the trial, who hears the testimony and the arguments, and whose own experience gives him a fine sense of the general atmosphere of trial proceedings, is in a far better position than appellate judges to evaluate the effect of [misconduct].' [Citation.]" (*Garcia v. Rehrig Internat., Inc.* (2002) 99 Cal.App.4th 869, 874.) " 'This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside.' [Citations.]" (*Seimon v. Southern Pac. Transportation Co.* (1977) 67 Cal.App.3d 600, 605 (*Seimon*).)

B. *The Trial Court's Evidentiary Ruling Was Proper*

At the outset, we conclude the trial court did not abuse its discretion (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281) in limiting the admissible evidence of discrimination to (1) incidents of discrimination involving Vanderspek, irrespective of whether they involved appellant, and (2) incidents of discrimination involving appellant, irrespective of whether they involved Vanderspek.

Appellant asserts that "evidence of discrimination directed to other employees, even by different supervisors, is relevant and admissible" and that "any evidence demonstrating that discrimination complaints by any employee that were unaddressed by [respondent] was relevant to the failure to prevent discrimination cause of action." (Boldface and italics omitted.) However, the authorities cited by appellant involve

9

evidence regarding conduct by the *same* supervisor or supervisors alleged to have discriminated against the plaintiffs. (See, e.g., *Pantoja v. Anton* (2011) 198 Cal.App.4th 87, 109, 114 [evidence of sexual harassment of other employees by individual employer accused of harassing the plaintiff relevant to show intent]; *Johnson v. United Cerebral Palsy/Spastic Children's Foundation* (2009) 173 Cal.App.4th 740, 759-760 [evidence of pregnancy discrimination by supervisory team accused of discriminating against the plaintiff relevant to show intent]; *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1160-1163 [evidence of conduct toward other employees by individual accused of harassing the plaintiff relevant to punitive damages].) None of the cases cited by appellant involve the admission of evidence of conduct toward other employees in the absence of a basis to conclude the evidence is relevant to establishing the decision maker's intent or the employer's negligence in failing to protect the plaintiff from the decision maker.

In any event, the trial court indicated it was also basing its ruling on Evidence Code section 352. Evidence regarding alleged discriminatory acts of other managers toward other employees was minimally probative at best and created a substantial risk of undue consumption of time at trial. The trial court did not abuse its discretion. (See *Hatai v. Department of Transportation* (2013) 214 Cal.App.4th 1287, 1298.)

C. *The Record Supports the Trial Court's Finding of Prejudicial Misconduct by Counsel*

A trial court may vacate a verdict and grant a new trial where attorney misconduct has deprived a party of a fair trial. (§ 657, subd. 1; see also *Bell v. Bayerische Motoren Werke Aktiengesellschaft* (2010) 181 Cal.App.4th 1108, 1122 (*Bell*).) "Attorney misconduct can justify a new trial only if it is reasonably probable that the party moving for a new trial would have obtained a more favorable result absent the misconduct. [Citations.]" (*Ibid.*) Even where the misconduct does "not seem too serious from our vantage point, we give weight to the expressed opinion of the trial judge" that the misconduct "in fact resulted in a verdict of passion and prejudice." (*Seimon, supra,* 67 Cal.App.3d at p. 606.)

10

In the Specification, the trial court granted the motion for new trial on the ground of attorney misconduct, and reasoned as follows: "A careful review of the record in this case demonstrates that both [appellant's] and [respondent's] counsel zealously and competently advocated on behalf of their respective clients throughout the trial. However, the court finds that [appellant's] counsel engaged in specific instances of misconduct that deprived [respondent] of a fair trial." (Fn. omitted.) The Specification points out that the trial court ruled that any evidence of statements or conduct by Vanderspek was admissible, but issues " 'surrounding demotions of other employees, racial statements made by other managers and or other employees, failure to pay bonuses, failure to pay raises, failure to train and/or discipline, all of that evidence, to the extent it does not relate to . . . Vanderspek, either an act that . . . Vanderspek did himself or a comment that . . . Vanderspek made, the court is excluding . . . .' " The Specification continues, "The court's ruling was clear. Yet despite the ruling and the repeated clarifications of that ruling both on the record and during unreported side bars, [appellant's] counsel proceeded to violate this ruling . . . ."

The Specification cites a number of illustrative examples of appellant's counsel's misconduct and concludes, "In sum, throughout trial, [appellant's] counsel intentionally engaged in misconduct in an endeavor to bring before the jury matters excluded from evidence, but highly inflammatory and prejudicial to [respondent]. The misconduct consisted of: (1) improper attempts to introduce irrelevant evidence in the jury's presence; (2) unfounded accusations of suppression of evidence; and (3) arguments replete with insinuations about [respondent's] treatment of African American employees. [¶] [Appellant's] counsel's conduct during the trial, from beginning to end, was characterized by the making of inflammatory statements designed to inflame the passion of the jury. Despite the attempts of the court to control the trial proceedings, [appellant's] counsel reduced the proceedings to a constant battle. The court struggled with counsel to allow only admissible evidence to the jury related to [appellant's] claims. Some of the instances are minor, but taken in their totality[, appellant's counsel's] continued misconduct made it impossible for [respondent] to have a fair trial.

11

[¶] Aggressive advocacy is not only proper but desirable because our jurisprudence is built upon a firm belief in the adversary system. However, the tenor of [appellant's] counsel's questions and the repeated attempts to introduce evidence related to other . . . employees and excluded by this court were of such a nature and consistency to deny a fair trial to the opposing side." The Specification states that the illustrative examples were "only a few of the violations of motions in limine," but it concludes the examples are sufficient to demonstrative prejudicial misconduct.[8] As explained below, the court did not abuse its discretion.

    1. <u>Appellant's Opening Statement</u>

The Specification explains that appellant's counsel's misconduct began during appellant's opening statement, with an attempt to characterize respondent as a broadly discriminatory employer. Appellant's counsel stated that respondent "failed to prevent discrimination in the San Francisco shipyard. The evidence will show that [respondent] not only permitted and tolerated but encouraged a culture of racial hostility toward African Americans." The trial court sustained an objection based on its in limine ruling, but a short time later counsel stated, "[respondent] is going to stand up here and tell you that this elimination of African Americans from the work force was just a restructuring done to save money."[9] The court once again sustained an objection, but appellant's counsel soon argued, "[t]he evidence, Ladies and Gentlemen, will show that this is an organization that will stop at nothing to cover up and silence the voice of anyone who objects to discrimination in its workplace." The Specification points out that any such evidence concerning other minority employees had clearly been excluded on grounds that the evidence was irrelevant and any probative value was outweighed by the prejudicial effect of such evidence, but "counsel ignored the court's prior ruling."

---

[8]   The Specification does not distinguish between the two attorneys representing appellant at trial, and neither will this court do so.

[9]   The Specification states, "There was no evidence that any other African American employee had been affected by the restructuring. To suggest that there was a blanket elimination of African American employees in [respondent's] workforce was improper."

On appeal, appellant argues the evidence his counsel referred to was admissible. However, we have already concluded the trial court did not abuse its discretion in ruling on the motion in limine, and, in any event, counsel was obligated to comply with the trial court's rulings. (*Charbonneau v. Superior Court* (1974) 42 Cal.App.3d 505, 514 ["While a counsel has every right to protest rulings which he believes to be erroneous, he has no right to willfully disobey with impunity a valid order of the court."].) Appellant also points out that the jury was instructed that statements by attorneys are not evidence, but appellant cites no authority that instruction precluded the trial court from concluding counsel's disregard of its rulings was misconduct. (See *Love v. Wolf* (1964) 226 Cal.App.2d 378, 392 ["As for curing error by admonishing a jury, while this may be possible when error is isolated and unemphasized, an attempt to rectify repeated and resounding misconduct by admonition is, as counsel here has expressed it, like trying to unring a bell. [Citations.]"].) Finally, appellant disputes the applicability of the trial court's in limine ruling to counsel's statements about respondent's restructuring and silencing objections to discrimination, but the court did not err in concluding counsel's statements referred to inadmissible evidence. Even if the statements, in isolation, could be construed as referring only to evidence involving appellant or Vanderspek, they set the stage for counsel's subsequent repeated attempts to put inadmissible evidence before the jury.[10]

2. Benjamin Guanzon Testimony

The trial court's next example related to the testimony of Benjamin Guanzon, a general foreman for respondent. Guanzon quit his job in 2009 and then returned to work

---

[10] For the first time in his reply brief, appellant argues his counsel's statements were proper because, in ruling on the motion in limine, the trial court stated that "whether or not there is a general atmosphere . . . that allows racial discrimination, or allows discriminatory conduct to occur . . . is relevant." We do not consider contentions presented for the first time in the reply brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8.) In any event, the trial court's statement was in reference to evidence of a discriminatory remark regarding appellant himself, and did not modify the trial court's ruling excluding evidence of discrimination not involving appellant or Vanderspek.

for respondent later in the year. At trial, appellant's counsel asked Guanzon, "[w]as one of the reasons you quit your employment . . . because of the way minority employees were treated, including yourself?" The court sustained an objection to the question based in the in limine ruling, but appellant's counsel still asked in the next two questions, "[w]as one of the reasons that you quit, Mr. Guanzon, the way you were treated?" And then, "[A]nd the way you were treated as a brown man; right?" The trial court again sustained an objection, but a handful of questions later appellant's counsel tried two more times to elicit the same evidence about Guanzon's perceptions of racial discrimination, eliciting two more objections from respondent. Following a sidebar, appellant finally stopped trying to elicit the evidence. (See *Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 354 [finding misconduct of counsel and stating "Frequently plaintiffs' counsel would ask a question to which an objection would be sustained. Occasionally he would abide by the court's ruling and pursue some other line of inquiry. Frequently he would not."].)

Later in the trial, appellant's counsel attempted to elicit from three other witnesses evidence that Guanzon felt he had been treated differently because of his skin color. On those occasions, the trial court sustained respondent's objections and appellant's counsel proceeded to repeat the allegations of discrimination shortly thereafter, drawing further objections, which were again sustained.

On appeal, appellant repeats his argument the testimony counsel sought to elicit was admissible; we have concluded the court did not abuse its discretion. Appellant also argues respondent opened the door to questioning Guanzon about any racial discrimination that may have motivated his departure, because respondent, during its cross-examination, asked questions suggesting Guanzon quit because he was upset about the hiring of an inexperienced supervisor. Appellant's counsel also argued that respondent had opened the door to appellant's questions in a sidebar during Guanzon's testimony. The cases cited by appellant support the general proposition that parties may ask questions on cross-examination delving deeper into topics addressed in the opposing party's examination. (See *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106,

14

1124; *People v. Crow* (1994) 28 Cal.App.4th 440, 452-453; *Gallaher v. Surperior Court* (1980) 103 Cal.App.3d 666, 671-672.)  However, appellant does not explain the relevance of the reasons for Guanzon's departure to appellant's claims and he does not explain why respondent's limited questioning on the topic *obligated* the trial court to permit appellant to inquire about Guanzon's discrimination allegations, despite the court's in limine ruling based on relevance grounds and Evidence Code section 352. Appellant has not shown the trial court abused its discretion in enforcing its in limine ruling.  Moreover, it was misconduct for appellant's counsel to repeatedly attempt to elicit the evidence at issue after the trial court sustained respondent's first objection.

For the first time in reply, appellant contends the questions about Guanzon's concerns about racial discrimination were proper because Guanzon's complaint "related directly to the manner" in which respondent investigated an allegation that another employee used a racial slur to refer to appellant.  In addition to being untimely, the contention fails because appellant does not cite to evidence or an offer of proof supporting his characterization of Guanzon's complaint.

3. <u>Eric Dismuke and David King Testimony</u>

The Specification points out that appellant asked witness Eric Dismuke, another African American employee, if he had ever complained about racial discrimination to respondent.  The trial court sustained respondent's objection based on the in limine ruling; appellant's counsel immediately thereafter elicited testimony that Dismuke had an ongoing lawsuit against respondent and asked, "Can you tell us generally what the claims are in your lawsuit against respondent?"  The trial court again sustained an objection from respondent.[11]

The Specification also points out that appellant asked witness David King whether, when he was working as assistant business manager for a union to which some

---

[11]  The Specification states that appellant's counsel thereafter asked the court clerk to mark Dismuke's complaint and the exhibit was withdrawn after a side bar.  However, no such sidebar is reflected in the relevant portion of the transcript; we do not rely on this incident in affirming the trial court's order.

15

of respondent's employees belonged, he brought "to [Dan] Ebert's[12] attention any complaints or claims involving race." The trial court sustained an objection based on the motion in limine ruling, but appellant's counsel shortly thereafter posed nearly the identical question, "Did you ever discuss with . . . Ebert complaints that involved a racial component?" The trial court again sustained an objection. Subsequently, appellant's counsel asked King if Dismuke came to him "with complaints about racial discrimination." The trial court again sustained an objection based on the in limine ruling.

On appeal, appellant repeats his argument the testimony counsel sought to elicit from these two witnesses was admissible; we have concluded the trial court did not abuse its discretion. For the first time in reply, appellant contends the questions posed to Dismuke were proper because Dismuke was demoted "after Vanderspek took over the yard." In addition to being untimely, the argument fails because appellant has not cited to evidence that Vanderspek was involved in the demotion. Also for the first time in reply, appellant contends the questions posed to King were proper "foundational" questions, because "had any of those complaints related to Vanderspek, testimony about them would not have violated any motion in limine." In addition to being untimely, the argument fails because, in context, the trial court could conclude it was misconduct for appellant's counsel to ask such broad questions likely to elicit inadmissible evidence. If counsel intended to elicit only complaints involving Vanderspek, counsel could have framed the question to elicit only such evidence.

4. William Cahill Testimony

The Specification points out that appellant asked William Cahill, respondent's human resources manager at the time of trial, whether another African American employee, Martin Nero, had complained that the failure to pay a bonus on a job was discriminatory. The trial court sustained respondent's objection based on the in limine ruling, but appellant's counsel ignored the ruling, asking "You never asked . . . Nero why

---

12  Ebert was respondent's then human resources manager.

16

he felt he was being discriminated against; did you." The trial court again sustained respondent's objection.

For the first time in reply, appellant contends the questions posed about Nero's complaint were proper because they related to discrimination by Vanderspek. In addition to being untimely, the argument fails because appellant has not cited to evidence that Vanderspek was involved in the decision about the bonus.

Another example of appellant's counsel's misconduct connected with Cahill's testimony relates to appellant's claim that another employee, Barry Thomas, told appellant that yet another employee, Cheri Mendieta, had used a racial slur when referring to appellant in October 2007. During Cahill's testimony, respondent's counsel asked Cahill whether, based on a review of Thomas's personnel file, Thomas was working for respondent in October 2007. Cahill testified that Thomas stopped working for respondent in July or August 2007. Subsequently, respondent supplied the trial court with Thomas's personnel file, which contained documentation that respondent did not employ Thomas after July 2007. The trial court noted that finding on the record outside the presence of the jury. Nevertheless, appellant's counsel, in cross-examining Cahill, led the jury to believe that respondent had brought only one page from the personnel file. Even more problematically, during appellant's closing argument, counsel repeated the assertion that Cahill's testimony was based on only one document from the personnel file and asserted that Cahill's testimony was a "lie." The Specification states, "counsel's impassioned argument during closing statements that the head of [respondent's] human resources testimony was a 'lie' was outside the bounds of legitimate advocacy because an in camera review of records did not yield a reasonable interpretation that . . . Cahill was not being truthful about the dates . . . Thomas worked for [respondent] or that he suppressed evidence."

On appeal, we understand appellant to argue that respondent should have presented more evidence to the jury to support its assertion that Thomas was not working for respondent in October 2007. But that is beside the point. The misconduct identified by the trial court was that counsel was making arguments and factual insinuations—that

17

Cahill had brought only one document from the personnel file and was lying about Thomas's last date of employment—where counsel knew those assertions were false. (See *Hoffman v. Brandt* (1966) 65 Cal.2d 549, 553, 555.) Appellant has not shown the trial court's finding of misconduct lacks support in the record.

    5. <u>Conclusion</u>

Appellant contends his counsel did not commit misconduct at trial. As described above, the record supports the trial court's findings that appellant's counsel committed misconduct, particularly by repeatedly disregarding the trial court's in limine ruling and orders sustaining objections based on the in limine ruling. (See *McCoy v. Pacific Maritime Association et al.* (2013) 216 Cal.App.4th 283, 304 (*McCoy*) [counsel committed misconduct by repeatedly violating trial court's rulings on motions in limine].)[13]

Appellant does not appear to argue that, if his counsel did commit misconduct, the misconduct did not deprive respondent of a fair trial. Nevertheless, we reach that issue and conclude the trial court did not abuse its discretion in concluding it is reasonably probable respondent would have obtained a more favorable result absent appellant's counsel's misconduct. (*Bell*, *supra*, 181 Cal.App.4th at p. 1122.) As the trial court found, appellant's counsel attempted repeatedly to direct the trial away from evidence on admissible matters—evidence directly related to Vanderspek or appellant—to elicit prejudicial testimony regarding the experiences of other former and current employees of respondent. (See *Balistreri v. Turner* (1964) 227 Cal.App.2d 236, 244-245 ["In the present case, [the] appellant's continual objections, all of which were sustained by the court, were unavailing to deter respondent's counsel even momentarily from his apparent

---

[13] At oral argument, appellant argued *McCoy* is distinguishable because there the trial court "warned appellant numerous times and even admonished the parties on the record just prior to closing argument about these rulings and the evidence that was not to be referenced." (*McCoy*, *supra*, 216 Cal.App.4th at p. 304 [2013 Cal. App. Lexis 374, pp. *36-*37].) Although the record in this case does not reflect numerous such warnings, the record does not reflect what warnings may have been given in sidebar conferences. In any event, appellant does not explain why his counsel was entitled to such warnings before the trial court could find counsel committed misconduct.

purpose of discrediting appellant in the eyes of the jurors and thereby trying him rather than the issues properly before the court."].)  Although a number of the instances of misconduct are not overly serious when viewed in isolation, "we give weight to the expressed opinion of the trial judge" that the misconduct "in fact resulted in a verdict of passion and prejudice."  (*Seimon, supra,* 67 Cal.App.3d at p. 606; see also *People v. Ault* (2004) 33 Cal.4th 1250, 1267 ["A trial court's finding of prejudice is based, to a significant extent, on ' "first-hand observations made in open court," ' which that court itself is best positioned to interpret.  [Citation.]"]; *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 412 ["Even the most comprehensive study of a trial court record cannot replace the immediacy of being present at the trial, watching and hearing as the evidence unfolds."].)  The closeness of the jury's verdict provides further support for the trial court's prejudice finding.  The trial court did not err in granting respondent's motion for new trial on the basis of misconduct that deprived respondent of a fair trial.

III.  *The Trial Court Properly Dismissed Appellant's Harassment Claim*

Appellant contends the trial court improperly granted respondent's motion for judgment on the pleadings as to his harassment claim.  Appellant argues the claim should be part of any retrial.

On January 4, 2009, appellant filed a form discrimination complaint against respondent with California's Department of Fair Employment and Housing (DFEH).  He alleged that during the course of his employment, he was subjected to "differential treatment."  On January 14, DFEH issued a notice of case closure and right-to-sue notice.  On March 20, after retaining an attorney, appellant filed another DFEH complaint and requested issuance of a right-to-sue notice.  The complaint stated, in part, "I allege that on June 19, 2008, the following conduct occurred:  _X_ termination . . . because of _X_ race/color."  The box for "harassment" was left unchecked.  On April 13, DFEH sent appellant a right-to-sue notice and closed the case.

On May 4, 2009, appellant filed the instant action.  The complaint included a claim of racial harassment in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940, subds. (h) & (j)).  Respondent and Vanderspek moved

19

for judgment on the pleadings on appellant's harassment cause of action, contending that appellant failed to exhaust his administrative remedies. In particular, they argued the DFEH administrative complaints did not assert harassment and alleged no harassing conduct. The trial court determined the administrative complaints established discrimination, but not harassment, and concluded appellant had failed to exhaust administrative remedies on the harassment claim. The court stated, "The facts on which [appellant] now bases harassment claims simply weren't mentioned or alluded to or discussed or apparent in any way, shape or form." This court affirmed the trial court's judgment of dismissal of Vanderspek. (*Radford v. Vanderspek, supra,* A129524 & A129762.) We now conclude the trial court also properly granted the motion for judgment on the pleadings as to the harassment claim against respondent.

"A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. [Citation.] A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review. [Citations.] All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law; judicially noticeable matters may be considered. [Citations.]" (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.)

"In the FEHA, the terms 'discriminate' and 'harass' appear in separate provisions and define distinct wrongs. [Citations.]" (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 705 (*Roby*).) Section 12940, subdivision (a) of the Government Code makes it "unlawful," subject to certain exceptions, "[f]or an employer, because of the race, . . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Subdivision (j)(1) of the same statute makes it unlawful, again subject to certain exceptions, "[f]or an employer . . . , or any other person, because of race . . . , to harass an employee . . . ." "Because the FEHA treats harassment in a separate provision, there is no reason to construe the FEHA's prohibition against discrimination broadly to include harassment." (*Roby*, at p. 706, fn. omitted.)

20

"Before filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies with [the] DFEH. Specifically, the employee must file an administrative complaint with [the] DFEH identifying the conduct alleged to violate [the] FEHA. At the conclusion of the administrative process, which may or may not include an investigation or administrative remedies, [the] DFEH generally issues the employee a right-to-sue notice. [Citation.]" (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 153.) Exhaustion of administrative remedies is a jurisdictional prerequisite to an action in court for violation of the FEHA. (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70.)

A civil action for violating the FEHA is limited to matters like or related to the DFEH complaint. (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1615 (*Okoli*).) In *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 266 (*Nazir*), an appeal from a summary adjudication of FEHA-based harassment claims for failure to exhaust administrative remedies, Division Two of this court adopted the following standard for determining the permissible scope of civil actions: " 'The administrative exhaustion requirement is satisfied if the allegations of the civil action are *within the scope of the EEOC charge*, any EEOC investigation actually completed, or any investigation that might reasonably have been expected to grow out of the charge. Thus, the judicial complaint may encompass any discrimination "*like and reasonably related to*" the allegations of the EEOC charge. [Citations.] . . . ' " The *Nazir* court reversed the summary adjudication of an FEHA harassment claim after noting that in the materials the plaintiff submitted to the DFEH during its prelitigation investigation, the plaintiff claimed to be the victim of constant harassment. (*Nazir,* at p. 268.) The court concluded the materials submitted by the plaintiff were "adequate to specify the nature of his problems at the workplace," and demonstrated a triable issue as to whether the plaintiff exhausted his administrative remedies. (*Id.* at pp. 268-269.)

*Nazir* requires us to construe the administrative complaint in light of what might be uncovered by a reasonable investigation. Appellant argues this compels an examination of facts and information outside the scope of the pleadings and, therefore,

21

cannot be determined as a matter of law on a motion for judgment on the pleadings: "Because the determination of whether a plaintiff exhausted the administrative remedies rests on the assessment of what *facts* the DFEH might have discovered if it had conducted a reasonable investigation, the issue is one of fact which cannot rationally be determined as a matter of law and must be left for determination by way of summary judgment—if undisputed facts can be established—or by way of trial." We disagree. *Nazir* did not hold or suggest that the determination of whether a plaintiff has exhausted administrative remedies cannot be made at the pleading stage, and appellant provides no authority for that assertion. There is no logical barrier to resolving this issue on the pleadings in the appropriate case.

Turning to the merits of the claim, appellant's administrative complaints clearly allege discrimination: "*explicit* changes in the 'terms, conditions, or privileges of employment' ([Gov. Code,] § 12940, subd. (a)); that is, changes involving some *official action taken by the employer*. [Citation.]" (*Roby, supra,* 47 Cal.4th at p. 706.) Even construed liberally, the allegations of the administrative complaints do not allege harassment; they do not refer to situations in which the social environment of appellant's workplace became intolerable as a result of harassment that communicated an offensive message to him. (*Ibid.*) Moreover, the administrative complaints do not allege " 'conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' " (*Id.* at p. 707.)

Appellant relies on language in *Roby, supra,* 47 Cal.4th at page 707, that "[a]lthough discrimination and harassment are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly with regard to proof." He argues the official employment actions alleged as discrimination in his DFEH complaints establish a basis for his harassment claim. *Roby* is inapposite. In *Roby*, the Supreme Court concluded "official employment actions . . . can also have a secondary effect of communicating a hostile message" "when the actions establish a widespread pattern of bias." (*Roby*, at p. 709.) Here, unlike in *Roby,* appellant alleged no widespread pattern of

22

bias in his DFEH complaints.  At bottom, appellant asks us to conclude that a DFEH complaint alleging only acts of discrimination will suffice to exhaust administrative remedies for nonofficial acts of harassment that could have been, but were not presented to the agency.  But adopting this approach would eliminate the distinction between the two claims separately codified in the FEHA.  (*Roby*, at pp. 705-707.)  This we cannot do.

The trial court properly granted respondent's motion for judgment on the pleadings.

IV. *The Parties' Other Contentions*

Because we affirm the trial court's order granting a new trial on the basis of misconduct of counsel relating to the in limine ruling, we need not address the trial court's finding of misconduct relating to appellant's counsel's comments about respondent's counsel; the trial court's conclusion before entry of judgment that the amount of punitive damages was unconstitutional, or the trial court's reduction in compensatory and punitive damages in its order on the motion for new trial and Specification.  (*Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 60.)  Neither need we address respondent's cross-appeal, which will be dismissed.  (*Sandco American, Inc. v. Notrica* (1990) 216 Cal.App.3d 1495, 1498 [" '[I]f, as is usual, the order granting a new trial is affirmed, the effect is that there is no longer a final judgment.  Hence, the merits of the cross-appeal will not be considered, and the appropriate order is a *dismissal* of that appeal.  [Citations.]'  . . . "].)

DISPOSITION

The order granting a new trial is affirmed.  The cross-appeal from the judgment is dismissed.  Respondent is awarded its costs on appeal.

23

_____

SIMONS, Acting P.J.

We concur.

_____

NEEDHAM, J.

_____

BRUINIERS, J.